IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KATIE HUSAK,                          §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §          Civil Action No. 3:22-CV-02729-E
                                      §
BAYLOR SCOTT & WHITE HEALTH et al.,   §
                                      §
        Defendants.                   §
                                      §
                                      §

**MEMORANDUM OPINION AND ORDER**

Before the Court are several motions: (i) Plaintiff Husak's Motion to Seal Plaintiff's Original Complaint, (ECF No. 5); (ii) Defendant Baylor Scott & White Health (Baylor)'s Motion to Dismiss, (ECF No. 12); and (iii) Defendant DiMaio's Motion to Dismiss, (ECF No. 14). Apart from Husak's Motion to Seal—to which no Defendant has responded—the remaining Motions have been fully briefed. For the reasons enumerated hereunder the Court: (i) DENIES Husak's Motion to Seal; (ii) GRANTS Baylor's Motion to Dismiss; and (iii) GRANTS DiMaio's Motion to Dismiss. As the Court declines to exercise supplemental jurisdiction, the Court dismisses all other common-law claims for lack of subject-matter jurisdiction. Last, the Court DENIES Husak's motions for leave to amend her pleadings, which are embedded within her motion to dismiss responses.

## I.    BACKGROUND

This case involves disputes regarding assault, battery, sexual harassment, sex discrimination, and negligence. On December 6, 2022, Husak initiated this litigation against Baylor; DiMaio; Spectral MD, Inc.; TOMV Holdings, LLC; and Texas Transplantation Society,

Inc. (ECF No. 1). On December 14, 2022, Husak filed her First Amended Complaint, which is her

live pleading. (ECF No. 6). Pertinent here, Husak alleges:

> Husak began her nursing career with Baylor in 2017 as a new graduate in the Cardiothoracic and Transplant Intensive Care Unit (ICU) at Baylor University Medical Center - Downtown. She continued to work at Baylor Downtown until September 2020, at which time she undertook employment with Rewards Staffing. She now serves as a PRN, as a travelling nurse within the Baylor system assisting at various ICU's that are in high demand as a result of the pandemic.
> . . .
> Husak is a Certified Critical Care Registered Nurse (CCRN). In addition, Husak is certified to care for patients placed on the following assisted devices: (1) Extracorporeal Membrane Oxygenation (ECMO); (2) Intraortic Balloon Pump (IABP); (3) Left Ventricular Assist Device (LVAD); (4) Right Ventricular Assist Device (RVAD); (5) Impella; (6) Continuous Renal Replacement Therapy (CRRT); and (7) Ventilator Weaning and Management. Husak was also entrusted by Baylor to train new graduates as they begin their careers in ICU.
>
> The incidents which form the basis of this lawsuit occurred at the Baylor Scott & White – Heart Hospital in Plano, Texas. Husak had been warned by her fellow nurse colleagues about Dr. DiMaio and his tendencies. Having been forewarned about his reputation, Husak purposely made an effort to never introduce herself to and avoid contact with Dr. DiMaio. Specifically, Husak was warned about Dr. DiMaio's reputation for being a "touchy, feely" kind of guy who likes to stand very close to nurses, and that he has a very specific type – "young and blonde."
>
> On October 6, 2021, Husak and Dr. DiMaio (and others) were in a patient's room. Dr. DiMaio stood unusually close to Husak. With each step Husak took to distance herself from Dr. DiMaio, he would move one step closer to Husak, making it difficult for Husak to focus on her patient care duties. At one point, Dr. DiMaio took out his cell phone and began to share his personal telephone number with Husak. Husak replied that if she needed his number, she would request it from another nurse.
>
> On October 25, 2021, a patient presented requiring immediate attention. While Husak was caring for her patient, Dr. DiMaio arrived. Under the circumstances, Husak's absolute presence and attention were required and both hands were pre-occupied, which rendered her defenseless. Dr. Dimaio, knowing Husak was in a position that required her absolute and undivided attention, noticed Husak utterly defenseless. In a predatory-like nature, Dr. DiMaio positioned himself inches directly behind Husak. Dr. DiMaio placed both of his hands firmly on Husak's upper back, began to slide his hands down to her mid-back, on to her sides, on to her lower back, and eventually down to her buttocks and with pressure grabbed her buttocks. During this encounter, Husak tried her best to remain focused on tending to her duties and responsibilities. Then, Dr. DiMaio got even closer to Husak and

whispered "you're doing great, don't stop, keep doing what you're doing" in her ear. Given the circumstances, Husak was unable to fend Dr. DiMaio off during this incident or take any action to protect herself. Several other medical staff were present in the patient's room and witnessed the incident.

Thereafter, several other Baylor staff members arrived to the patient's room. At or near this time, Dr. DiMaio left from behind Husak and stormed out of the room.

Several minutes later, while Husak was tending to her duties and responsibilties, Dr. DiMaio inquired as to who the primary nurse of the patient was. Husak acknowledged that it was her. Dr. DiMaio stood next to her and continued repeating her name over and over "Katie, Katie, Katie . . .," while Husak was trying to complete her responsibilities.

Atypical to physician practice, Dr. DiMaio remained in the room while continuing to position himself unusually close to Husak – awkwardly leaning into Husak. Although Husak repeatedly tried to escape his awkward positioning, she was cornered and did not have much room to move.

Once Dr. DiMaio left the room, Husak stayed behind to give Dr. DiMaio enough time to get down the hallway in order to avoid any further assaults by him. As Husak opened the door to leave the room, Dr. DiMaio was standing directly in the doorway, inches from Husak, and would not move. As she attempted to squeeze by the side to get out and close the door, Dr. DiMaio placed his hand on her left shoulder.

Immediately following the incident, Husak reported the incident to the appropriate authorities and her employer.

(ECF No. 6 at 3-5).

Husak pled claims against all Defendants for (i) sexual harassment under Chapter 21 of the

Texas Labor Code; (ii) negligence; and (iii) gross negligence.[1] Husak pled claims against DiMaio

for (i) sexual assault, assault, and battery and (ii) intentional infliction of emotional distress. Husak

pled claims against Baylor for (i) negligent hiring, retention, training, and screening, and failure

---

[1] Husak enumerates "Count IV" as a claim for "AGENCY, RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY" against all Defendants. (ECF No. 6 at 7). However, such theories are not claims but rather theories upon which liability may attach.

MEMORANDUM OPINION AND ORDER                                                    Page **3** of 25

to warn and (ii) sex discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964 (Title VII).[2]

On December 8, 2022, Husak moved to seal her Original Complaint. (ECF No. 5; *see* ECF No. 1). On February 10, 2023, Baylor moved to dismiss all claims against it in accordance with Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12). On February 13, 2023, DiMaio moved to dismiss the sexual harassment claim pled against him under Chapter 21 of the Texas Labor Code in accordance with Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 14). Husak responded to each motion to dismiss—within which she embeds a Motion for Leave to amend her pleadings. (ECF Nos. 17, 18). Both Baylor and DiMaio filed respective replies. (ECF Nos. 19, 21). As briefed, the Parties' respective motions are ripe for adjudication.

## II.    LEGAL STANDARDS

### A.  Motion to Seal

Pursuant to Local Civil Rule 79.3(b), "[i]f no statute or rule requires or permits a document to be filed under seal, a party may file a document under seal only on motion and by permission of the presiding judge." Should no statute or rule require or permit sealing of the document, the Court must determine whether sealing is warranted. The Court "heavily disfavor[s] sealing information placed in the judicial record." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519-20 (5th Cir. 2022). In determining whether a document should be sealed, the Court undertakes a "document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (internal quotation marks and citations omitted). This standard is "arduous," and

---

[2] Although Husak pled sexual harassment claim(s) under Title VII and the Texas Labor Code against Baylor and DiMaio, the Court refers to these claim(s) in the singular as—discussed hereunder—the correspondent elements and analyses are the same.

the balancing test is stricter than it is at the discovery stage. *June Med. Servs.*, 22 F.4th at 521. "[T]he working presumption is that judicial records should not be sealed." *Binh Hoa Le*, 990 F.3d at 419 (citation omitted).

### B.  Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court will not accept as true "legal conclusions couched as factual allegations." *Iqbal*, 556 U.S. at 678 "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### C.  Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of subject-matter jurisdiction may be found in any one of three instances: (i) the complaint alone; (ii) the complaint supplemented by the undisputed facts evidenced in the record; or (iii) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction exists. *Ramming*, 281 F.3d at 161. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

When challenging subject-matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *Patterson v. Rawlings*, 287 F.Supp.3d 632, 637 (N.D. Tex. 2018) (citing *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). If the party merely filed its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Paterson*, 644 F.2d at 523. If the allegations are sufficient to allege jurisdiction, "the complaint stands," and the court must deny the motion. *Paterson*, 644 F.2d at 523. A party can also make a factual attack on subject-matter jurisdiction by submitting evidence, such as affidavits or testimony. *Paterson*, 644 F.2d at 523. Such an attack challenges the facts on which jurisdiction depends and matters outside the pleadings, such as affidavits and testimony, are considered. *Menchaca v. Chrysler Credit Corp.*,

613 F.2d 507, 511 (5th Cir. 1980) (internal citation omitted). "The court is free to weigh the evidence and satisfy itself as to the existence of the power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

### III.   ANALYSIS

Ordinarily, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). However—under these circumstances and as explained hereunder—the Court declines to consider DiMaio's Rule 12(b)(1) motion before addressing Baylor and DiMaio's Rule 12(b)(6) motions. Instead, the Court addresses each motion chronologically.

#### A.  Husak's Motion to Seal

Husak avers in her motion to seal that "the Complaint *may* contain protected health information under HIPPA [sic]"—referring to the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (ECF No. 5 at 2). Husak fails to further identify any portions of her original complaint that divulge any protected health information. (*Compare* ECF No. 5, *with* ECF No. 1). Husak refers the Court to no statute or rule that permits sealing. The Court has conducted a line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure of the original complaint. *See Binh Hoa Le*, 990 F.3d at 419. The Court has determined no part of Husak's original complaint that divulges protected health information—as defined in HIPAA. *See generally* 45 C.F.R. § 160.103 (defining several terms under HIPAA, including protected health information). Consequently, the Court has discovered no statute or rule that would permit sealing of Husak's original complaint.

Husak has failed to show an entitlement to sealing her original complaint. Husak has failed to overcome the "working presumption" that judicial records should not be sealed. *Binh Hoa Le*, 990 F.3d at 419 (citation omitted). For the reasons above, the Court DENIES Husak's Motion to Seal her original complaint.

### B. Baylor's Motion to Dismiss Husak's Sexual Harassment Claim and Sex Discrimination Claim

Husak asserts, in parallel, a sexual harassment claim against Baylor and DiMaio based on (i) Title VII and (ii) Texas Labor Code Chapter 21 (referred herein as the Texas Commission on Human Rights Act or "TCHRA"). (ECF No. 6 at 6-7, 9-10).[3] Husak further asserts a sex discrimination claim against Baylor based on (i) Title VII and (ii) the TCHRA. (ECF No. 6 at 6-7) "[T]he purpose of Title VII is to protect employees from their employers' unlawful actions." *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 667 (5th Cir. 2020), cert. denied, 209 L. Ed. 2d 125, 141 S. Ct. 1382 (2021) (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011)). Like Title VII, the TCHRA serves to protect employees from their employers' unlawful actions. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (explaining that one of the TCHRA's purposes is to provide for the execution of the policies of Title VII.).[4]

---

[3] The Court recognizes that the Commission on Human Rights has been replaced with the Texas Workforce Commission's civil rights division. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010) (citing Tex. Lab. Code Ann. § 21.0015). Throughout this memorandum opinion and order, the Court refers to Texas Labor Code Chapter 21 as the TCHRA.

[4] The Texas Supreme Court has explained that claims asserted under the TCHRA should be analyzed in the same manner as its federal analogues. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (citations omitted) ("Because one of the purposed of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA."); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (noting the *McDonnell Douglas* burden shifting analysis applies to TCHRA disability discrimination cases); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (discussing disability discrimination under the TCHRA as parallel to the ADA).

---

MEMORANDUM OPINION AND ORDER

"[T]he law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 at n.2 (5th Cir. 1999).[5] Thus, as the proofs for these parallel claims are identical, the Court analyzes each of the corresponding claims asserted under Title VII and the TCHRA, together.

    i.    *Husak's Sexual Harassment Claim*

Title VII prohibits sexual harassment as a form of employment discrimination. *EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc) ("There are two types of sexual harassment under Title VII: quid-pro-quo and hostile-environment harassment.").[6] Here, Husak's pleadings and the Parties briefing only concern the latter, "hostile-environment harassment" type of sexual harassment claim.[7] *See Boh Bros.*, 731 F.3d at 453; *see generally Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). Nevertheless, "Title VII does not prohibit all harassment." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (citing *Meritor Sav. Bank*, 477 U.S. at 67). Rather, "[i]t makes harassing conduct unlawful when it results in the employer 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Meritor Sav. Bank*, 477 U.S. at 67 (quoting 42 U.S.C. § 2000e-2(a)(1)) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993); *Meritor Sav. Bank*, 477 U.S. at 64-67).

---

[5] *See, e.g.*, *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) ("The substantive law governing Title VII and TCHRA retaliation claims is identical.")

[6] "A claim of 'hostile environment' sex discrimination is actionable under Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).

[7] Neither the pleadings nor the Parties' briefing support discussion or adjudication of Husak's claims as the former "quid-pro-quo" type of sexual harassment, so the Court pretermits any according discussion or adjudication. *See generally, e.g.*, *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 221 (5th Cir. 2023) (discussing both types of sexual harassment).

---

MEMORANDUM OPINION AND ORDER <span style="float:right">Page **9** of **25**</span>

An employee who brings a hostile work environment claim must show that:

**(1)** she belongs to a protected class; **(2)** she was subjected to harassment; **(3)** the harassment was based on sex; **(4)** the harassment affected a term, condition, or privilege of employment; and **(5)** the employer knew or should have known of the harassment **and** failed to take remedial action.

*Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (citing

*Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005)) (emphasis added in bold); *see, e.g.*,

*See Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001) (discussing the same).

Pertinent here are the third, fourth, and fifth elements of a sexual harassment hostile work

environment claim, which the Court next addresses separately, hereunder.

A)   Whether Husak was Subjected to Harassment

The Equal Employment Opportunity Commission (EEOC)'s guidelines on discrimination

because of sex describe sexual harassment.

**Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature *constitute sexual harassment* when (1)** submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, **(2)** submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or **(3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.**

29 C.F.R. § 1604.11 (emphasis added in bold and bold italics).[8] The Fifth Circuit has defined

"unwelcome sexual harassment" as

"sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989). [. . .] [I]n *Ellert v. Univ. of Texas at Dallas*, we found no sexual harassment where there was no evidence that the alleged

---

[8] In the sexual harassment analysis, no Party briefs (i) whether submission to such conduct was made either explicitly or implicitly a term or condition of an individual's employment or (ii) submission to or rejection of such conduct by Husak was used as the basis for employment decisions affecting her. And, Husak pled no such corresponding facts. (*See* ECF No. 6).

---

MEMORANDUM OPINION AND ORDER                                    Page **10** of 25

harasser discussed sexual matters, initiated any physical contact, or made any threats or promises conditioned on the plaintiff's response to his advances. 52 F.3d 543, 545 (5th Cir. 1995).

*Marquez v. Voicestream Wireless Corp.*, 115 F. App'x 699, 701 (5th Cir. 2004).

As pled and briefed, Husak asserts sexual harassment occurred on two days—October 6, 2021, and October 25, 2021. (ECF No. 6 at 4-5; ECF No. 17 at 12). Husak asserts each of the incidents on October 6 and 25 of 2021, constituted harassment that affected a term, condition, or privilege of her employment. Husak denotes each instance of the alleged harassment as follows:

i. ". . . DiMaio stood unusually close to Husak. With each step Husak took to distance herself from Dr. DiMaio, he would move one step closer to Husak . . . ." Am. Compl. at ¶22.

ii. ". . . Dr. DiMaio . . . began to share his personal telephone number with Husak" without any request for the same from Husak. *Id.*

iii. ". . . Dr. DiMaio positioned himself *inches* directly behind Husak" knowing that Husak was defenseless as she was rendering patient care. "Dr. DiMaio placed both of his hands firmly on Husak's upper back, began to slide his hands down to her mid-back, on to her sides, on to her lower back, and eventually down to her buttocks and with pressure grabbed her buttocks." Am. Compl. at ¶23.

iv. ". . .Defendant Dr. DiMaio got even closer to Husak and whispered "you're doing great, don't stop, keep doing what you're doing" in her ear. *Id.*

v. "Dr. DiMaio stood next to her and continued repeating her name over and over "Katie, Katie, Katie . . ." out loud while Husak was attempting to complete her job responsibilities. Am. Compl. at ¶25.

vi. ". . . Dr. DiMaio remained in the room while continuing to position himself unusually close to Husak – awkwardly leaning into Husak. Although Husak repeatedly tried to escape his awkward positioning, she was cornered and did not have much room to move." Am. Compl. at ¶26.

vii. "Once Dr. DiMaio did finally leave the room, Husak stayed behind to give Dr. DiMaio enough time to get down the hallway in order to avoid any further assaults by him. As Husak opened the door to leave the room, Dr. DiMaio was standing directly in the doorway, inches from Husak, and would not move. As she attempted to squeeze by the side to get out and close the door, Dr. DiMaio placed his hand on her left shoulder." Am. Compl. at ¶27.

(ECF No. 17 at 12).[9] As pled, Husak's first two denoted instances of harassment occurred on October 6, 2021, and the remaining five instances occurred on October 25, 2021. (ECF No. 6 at 3-5).

Baylor challenges (i) both of the October 6, 2021, instances and (ii) the fourth to seventh instances on October 25, 2021, as "no way analogous to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature." (ECF No. 12 at 14-15) (citing *Marquez*, 115 F. Appx. at 701-02).[10] In response, Husak combines the alleged instances on October 25, 2021, to assert unwelcome sexual harassment occurred. (ECF No. 17 at 13).

The Court determines that—under mandatory law discussed above—neither of the October 6, 2021, instances—whether taken independently or combined—constituted harassment. Standing close to another worker or sharing a phone number—as in the circumstances pled—neither (i) constituted sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature nor (ii) have the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *See* 29 C.F.R. § 1604.11; *Marquez*, 115 F. App'x at 701.

Similarly, whispering to another worker; repeating a worker's name; "positioning" close to a worker; standing in a doorway; and placing a hand on a shoulder—as alleged in Husak's pleadings—do not constitute sexual harassment, as defined. Thus, the Court determines that the fourth to seventh instances on October 25, 2021—taken independently—did not constitute harassment. However—as for the third instance that occurred on October 25, 2021, and for the

---

[9] Husak cites her own Amended Complaint by paragraph as "Am. Compl." (*See generally* ECF No. 17).

[10] Baylor does not challenge whether the third incident constituted harassment.

purpose of determining these motions to dismiss—the Court assumes without deciding that Husak was subjected to harassment.[11]

    B)  <u>Whether the Harassment Affected a Term, Condition, or Privilege of Employment</u>

Regarding the fourth element of a sexual harassment hostile work environment claim, the Fifth Circuit has stated:

> To affect a term, condition, or privilege of employment, the **harassment must be sufficiently severe or pervasive to alter the conditions of employment *and* create an abusive work environment**. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). "Whether an environment is hostile or abusive **depends on a totality of circumstances**, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). **"[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."** *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 n.3 (5th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

*Saketkoo*, 31 F.4th at 1003 (emphasis added in bold and bold italics).

Baylor asserts that the alleged harassment was not severe or pervasive to alter the conditions of employment and create an abusive work environment. Referring to the third and seventh incidents—wherein DiMaio "allegedly placed his hand on her shoulder and ran his hands down her back to squeeze her buttocks, and then shortly thereafter, put his hand on her shoulder while walking past her out the door"—Baylor asserts "these two allegations do not, as a matter of law, establish a severe or pervasive work environment sufficient to show a plausible claim for relief." (ECF No. 12 at 15) (collecting cases). In response, Husak focuses on the October 21 and 25, 2021 instances—alleging that such conduct, which occurred on two days of work, "interfered

---

[11] To be clear, the Court enters no finding or conclusion as to whether Husak was subjected to harassment.

with Husak's work performance and her ability to give her emergency patient her undivided attention and concentration." (ECF No. 17 at 18).

Here, Husak pled no facts that the conditions of her employment were altered. As pled, Husak has worked with Baylor since 2017, and it is undisputed that Husak continues to work within the Baylor system. (ECF No. 6 at 3). Husak's pled no facts of her work after she "reported the [October 25, 2021] incident to the appropriate authorities and her employer." (ECF No. 6 at 5). As discussed and assumed above, the third instance—which involved DiMaio's alleged physical touching of Husak—constituted harassment. In light of the totality of the circumstances, this amounts to an isolated incident that is not extremely serious as to amount to discriminatory changes in the terms and conditions of Husak's employment. *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 n.3 (5th Cir. 1998); *see generally Landry v. Leesville Rehab. Hosp., L.L.C.*, No. 21-30423, 2022 WL 358168, at *3 (5th Cir. Feb. 7, 2022) (collecting cases and determining that no severe harassment occurred when a patient "touched plaintiff's butt" and called her beautiful and sexy). Indeed, assuming *arguendo* that all seven of the instances constituted harassment, the Court would reach the same result—that DiMaio's conduct was not so severe and pervasive as to "affect [Husak's] term, condition or privilege of employment," as required to support her sexual harassment hostile work environment claim. *See Landry*, 2022 WL 358168 at *3; *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 829 (5th Cir. 2009) (Single incident in which coworker (i) "chested up" to female employee's breasts in 30-second confrontation; (ii) followed employee as she tried to separate herself; (iii) placed his arm around her waist; and (iv) rubbed his pelvic region across her hips and buttocks, was not so severe or pervasive as to alter terms and conditions of employment); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (determining female plaintiff Hockman's alleged harassment  from  a  another  worker  who

---

"(1) [] once made a remark to Hockman about another employee's body, (2) [] once slapped her on the behind with a newspaper, (3) [] "grabbed or brushed" against Hockman's breasts and behind, (4) [] once held her cheeks and tried to kiss her, (5) [] asked Hockman to come to the office early so that they could be alone, and (6) [] once stood in the door of the bathroom while she was washing her hands[,]"  was not so severe and pervasive as to "affect term, condition or privilege of employment," as required to support her hostile work environment claim).[12]

Thus, for the reasons discussed above, the Court concludes that, as pled, Husak has failed to show the fourth element of a hostile work environment claim—that the harassment affected a term, condition, or privilege of employment. Therefore, the Court GRANTS Baylor's motion to dismiss Husak's sexual harassment hostile work environment claims under Title VII and the TCHRA.

C) <u>Whether Baylor Knew or Should Have Known of the Harassment and Failed to Take Remedial Action</u>

The above notwithstanding, the Court next addresses the fifth element of a sexual harassment hostile work environment claim. As to this fifth element, Baylor asserts "Plaintiff does not allege BSWH had any prior knowledge of any allegedly inappropriate behavior by co-Defendant Dr. DiMaio, who was not a BSWH employee, yet failed to take prompt, remedial action." (ECF No. 12 at 17). In response, Husak refers to her pleadings that "Husak had been warned by her fellow nurse colleagues about Dr. DiMaio and his tendencies[]" . . . "his reputation" . . . "for being a 'touchy, feely' kind of guy who likes to stand very close to nurses, and that he has a very specific type – 'young and blonde.'" (*Compare* ECF No. 17 at 18-19 *with* ECF No. 6 at 4).

---

[12] Nevertheless, taken as true, the actions "could be considered insensitive, boorish, uncouth, or even offensive." *Pfeil v. Intecom Telecommunications*, 90 F. Supp. 2d 742, 748 (N.D. Tex. 2000) (concluding no sexual harassment occurred); *see, e.g.*, *Shepherd v. Comptroller of Pub. Accts. of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (discussing the same and declining to determine a genuine issue of material fact existed as to whether the harassment affected a "term, condition, or privilege" of employment").

---

Husak further refers to her pleadings regarding the October 6 and 25, 2021 instances, discussed above. Husak's response as to the remedial action generally avers that Baylor "continues to employ [DiMaio], and . . . has turned a blind eye to the incident. Therefore, dismissal would be premature at the 12(b)(6) stage of litigation as Husak has not had the opportunity to conduct discovery with respect to this element of sexual harassment." (ECF No. 17 at 19).[13]

Not accepting as true legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, and accepting as true all well-pleaded facts, *Walker*, 938 F.3d at 735—Husak's First Amended Complaint contains no well-pleaded facts that Baylor knew or should have known of the alleged harassment that Husak was subjected to from DiMaio. To the contrary, the Court takes as true that Baylor learned of the alleged harassment that Husak endured on October 25, 2021—*after* Husak reported the alleged instances of harassment to Baylor. (ECF No. 6 at 5). Furthermore, no pleading indicates Baylor failed to take remedial action. Indeed, Husak's First Amended Complaint contains no allegations about what occurred after October 25, 2021—other than both she and DiMaio continued to work with Baylor.

As to Husak's argument that dismissal would be "premature" as she has not "had the opportunity to conduct discovery" as to the remedial action sub-element for her sexual harassment hostile work environment claim, the Court rejects such an argument. (ECF No. 17 at 19). Husak directs the Court to no law that a motion to dismiss is improper due to a lacking of discovery, and the Court has found none. *See* Fed. R. Civ. P. 12; *see, e.g.*, *Bradley v. Target Corp.*, No. 3:23-CV-00193-E, 2023 WL 6166475, at *2-3 (N.D. Tex. Sept. 21, 2023) (rejecting the same theory).

---

[13] Husak does not plead DiMaio was Husak's supervisor. (*See* ECF No. 6). No Party briefed DiMaio as Husak's supervisor.

For those reasons, the Court concludes that, as pled, Husak has failed to show the fifth element of a hostile work environment claim—whether the employer knew or should have known of the harassment and failed to take remedial action. Therefore, the Court GRANTS Baylor's motion to dismiss Husak's sexual harassment hostile work environment claims under Title VII and the TCHRA.

>        ii.        *Baylor's Motion to Dismiss Husak's Sex Discrimination Claim*

Under Title VII, "*it shall be an unlawful employment practice for an employer--to discharge any individual*, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). In other words, "an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII." *Bostock v. Clayton Cnty.*, ⸺ U.S. ⸺, 140 S. Ct. 1731, 1740, 207 L. Ed. 2d 218 (2020). "It doesn't matter if other factors besides the plaintiff's sex contributed to the decision." *Bostock*, 140 S. Ct. at 1741. "[I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred." *Bostock*, 140 S. Ct. at 1741.

To establish a *prima facie* case of sex discrimination under either Title VII or the TCHRA a plaintiff must show:

> **(1)** she is a member of a protected class; **(2)** she was qualified for the position she sought; **(3)** she suffered an adverse employment action; and **(4)** others similarly situated but outside the protected class were treated more favorably.

*Saketkoo*, 31 F.4th at 997–98 (emphasis added in bold); *see, e.g., Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 679 (5th Cir. 2021) (discussing sex discrimination claim under Title VII).

Here, Baylor challenges only the third element—whether Husak suffered an adverse employment action.

Baylor asserts "Plaintiff cannot establish a claim for sex discrimination because she does not allege, because she cannot, that she suffered any adverse employment action." (ECF No. 12 at 12). Husak offers no response as to this element of her sex discrimination claim and provides no briefing as to whether she suffered an adverse employment action.

Here, Husak's pleadings contain no facts, taken as true, that she suffered any adverse employment action. Furthermore, a party who fails to pursue a claim beyond its initial pleading may waive or abandon the claim. *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."). Thus, a party's failure to defend a claim in her response to a motion to dismiss constitutes abandonment. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment) (citing *Black*, 461 F.3d at 588 n.1); *see, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001) (discussing abandonment of theories of recovery and defenses when such theories were not presented to the trial court).

Here, the Court must conclude Husak failed to state a sex discrimination claim upon which relief can be granted because Husak failed to plead any facts that she suffered an adverse employment action. Furthermore, Husak has failed to defend her sex discrimination claim in response to Baylor's motion to dismiss. *See Black*, 461 F.3d at 588 n.1; *Matter of Dallas Roadster*, 846 F.3d at 126; *Vela*, 276 F.3d at 678-79.[14] For those reasons, the Court GRANTS Baylor's motion to dismiss as to Husak's sex discrimination claims under Title VII and the TCHRA.

---

[14] *See also, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quoting *Magee v. Life Ins. Co. of N. Am.*, 261

### C. DiMaio's Motion to Dismiss Husak's Sexual Harassment Claim

*i.   Husak's Exhaustion of Administrative Remedies*

DiMaio's Motion to Dismiss Husak's sexual harassment hostile work environment claim focuses on whether Husak failed to exhaust her administrative remedies as to that claim against him—relying on both Rule 12(b)(1) and 12(b)(6).[15] DiMaio first asserts "Plaintiff has failed to satisfy the administrative prerequisites to file suit and has failed to plead facts sufficient to state a claim for relief." (ECF No. 14 at 4-5). DiMaio further asserts Husak, in her Charge to the EEOC and the Texas Workforce Commission, "failed to raise retaliation and sexual harassment; she only raised sex discrimination." (ECF No. 14 at 8-9). However, as discussed hereunder, the Court has determined Husak failed to state a claim upon which relief can be granted. Therefore, the Court pretermits discussion of whether Husak failed to exhaust her administrative remedies.

*ii.   Dismissal of Sexual Harassment Claim Under Rule 12(b)(6)*

"As a general rule, a district court may dismiss a complaint on its own for failure to state a claim." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (quoting 5A WRIGHT & MILLER, FED. PRACTICE AND PROCEDURE § 1357, at 301 (2d ed.1990))). The Fifth Circuit has "noted:"

> that the district court can only dismiss an action on its own motion " 'as long as the procedure employed is fair.' " *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (quoting 5A Wright & Miller, Fed. Practice and Procedure § 1357, at 301 (2d ed.1990)). We have further suggested that fairness in this context requires "both notice of the court's intention and an opportunity to respond." *Bazrowx,* 136 F.3d at 1054 (quoting *Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1185 (7th Cir.

---

F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)) (citations omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

[15] As discussed above, no Party briefed quid-pro-quo sexual harassment.

---

MEMORANDUM OPINION AND ORDER                                          **Page 19** of 25

1989)). This is consistent with the view of three other circuits that district courts should not dismiss claims *sua sponte* without prior notice and opportunity to respond. *See, e.g., Fredyma v. AT&T Network Systems, Inc.,* 935 F.2d 368 (1st Cir. 1991); *Thomas v. Scully,* 943 F.2d 259 (2nd Cir. 1991); *Smith v. Boyd,* 945 F.2d 1041 (8th Cir. 1991).

*Carroll*, 470 F.3d at 1177.

Here, Husak's sexual harassment claim is pled identically as to Baylor and DiMaio. (ECF No. 6 at 6-7). Between Baylor and DiMaio, Husak pled no differing facts as to her claim of sexual harassment. (*See generally* ECF No. 6). Husak further pled a desire to hold "All Defendants" liable—including for her sexual harassment claim—under theories of agency, respondeat superior, and vicarious liability. (ECF No. 6 at 7). Instead of focusing on the elements of Husak's claim, DiMaio's briefing focused on Husak's purported failure to exhaust administrative remedies. (*See* ECF No. 14). DiMaio did not join Baylor's motion to dismiss.

The Court recognizes that the circumstances here are not identical to those discussed in *Carrol* and *Bazrowx*; here, DiMaio has moved to dismiss Husak's sexual harassment hostile work environment claim under Rule 12(b)(6). *See generally Carroll*, 470 F.3d at 1177; *Bazrowx*, 136 F.3d at 1054. Nevertheless, the Court raises *sua sponte* that Husak's claim for sexual harassment should also be dismissed as to DiMaio for the same reasons that claim is dismissed hereabove as to Baylor. However, as DiMaio has not sought Rule 12(b)(6) dismissal on this specific basis, the Court next addresses whether the procedure employed as to Husak's sexual harassment claim— addressing DiMaio's 12(b)(6) motion on the sexual harassment hostile work environment claim on the elements of that claim—is "fair." *See Carroll*, 470 F.3d at 1177 (collecting cases).

Under the pleadings and circumstances of this case, the Court determines the procedure of the corresponding dismissal of Husak's sexual harassment claim is fair because (i) Husak's pled sexual harassment claim as to Baylor and DiMaio is identical; (ii) Husak pled no facts that

---

distinguish her sexual harassment claim as alleged against Baylor and DiMaio; (iii) Husak sought to hold Baylor and DiMaio liable for her sexual harassment claim under theories of agency, respondeat superior, and vicarious liability; (iv) the elements of Husak's sexual harassment claim as to Baylor and DiMaio are identical; (v) Husak fully briefed each challenged element of her sexual harassment claim in response to Baylor's Rule 12(b)(6) motion to dismiss; and (vi) had DiMaio challenged the elements of Husak's sexual harassment claim, the Court would likely enter the same determination(s) for the same reason(s) as dismissing Husak's sexual harassment claim against Baylor. Indeed, as discussed above, Husak's pleadings and briefing fail to include well-pleaded facts and a defense, respectively, for the final element of her sexual harassment hostile work environment claim. Furthermore—as the Court declines to exercise supplemental jurisdiction of Husak's remaining common-law claims, hereunder—the Court views such dismissal of Husak's sexual harassment claim against DiMaio as serving the interests of judicial economy. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348-49 (discussing "pendent jurisdiction" and corresponding considerations of judicial economy, convenience, and fairness to litigants).

For the reasons enumerated hereabove, the Court concludes Husak's sexual harassment claim against DiMaio should be dismissed for the same reason(s) that claim has been dismissed against Baylor. *See* Fed. R. Civ. P. 12(b)(6); *Carroll*, 470 F.3d at 1177. The Court GRANTS DiMaio's motion to dismiss Husak's sexual harassment claim in accordance with Rule 12(b)(6)—for failure to state a claim upon which relief can be granted.[16]

---

[16] The Court pretermits discussion of DiMaio's Rule 12(b)(1) motion to dismiss Husak's sexual harassment claim as unnecessary.

### D. Supplemental Jurisdiction

Having dismissed Husak's Title VII claims, no federal-law claims remain.  Supplemental jurisdiction over state law claims is a "doctrine of *discretion*, not of plaintiff's *right*." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) (emphasis added). Hereabove, the Court has exercised supplemental jurisdiction in adjudicating Husak's TCHRA claims relating to sexual harassment hostile work environment and sex discrimination. In determining whether to exercise supplemental jurisdiction over Husak's remaining state-law claims, "the court is guided by the statutory factors set forth in 28 U.S.C. § 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 601–02 (5th Cir. 2009). When, as in this case, the single federal-law claim is eliminated at an early stage of the litigation, the general rule is to dismiss any pendent state-law claims. *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir. 1992).

The Court sees no reason to deviate from the general rule here. Each of the common law factors weigh heavily in favor of dismissal. First, the Court has not devoted substantial judicial resources to this case as the court has not made any significant or dispositive rulings until this one. Furthermore, dismissing the state-law claims against Defendants will not cause any unfairness or inconvenience to the parties. Even though Husak will have to refile her claims in state court if she wishes to pursue them, little new legal research will be necessary, as the same law that governs the claims here in federal court will continue to govern in state court. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992) (applying the same analysis under similar procedural circumstances). Finally, principles of comity and federalism especially favor dismissal, as no federal-law claims against Baylor or DiMaio remain to be decided. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. at 350, n. 7. The statutory factors provide

no compelling reason to retain jurisdiction, either. Thus, Husak's remaining, pendent state-law causes of action against Defendants should be dismissed without prejudice to their refiling in state court. *See, e.g.*, *Pennie v. Obama*, 255 F. Supp. 3d 648, 673 (N.D. Tex. 2017) (declining to exercise supplemental jurisdiction); *Meroney v. Pharia, LLC*, 688 F. Supp. 2d 550, 555 (N.D. Tex. 2009) (discussing the same).

### E.  Leave to Amend

Husak requests leave to further amend her complaint in each response to Baylor and DiMaio's respective motion(s) to dismiss. (ECF No. 17 at 25-26; ECF No. 18 at 14-15). The Fifth Circuit has addressed leave to amend pleadings.

> Under Rule 15(a), "leave to amend shall be freely given when justice so requires," and should be granted absent some justification for refusal. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The liberal amendment policy underlying Rule 15(a) affords the court broad discretion in granting leave to amend and, consequently, a motion for leave to amend should not be denied unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment, ..." *Foman,* 83 S.Ct. at 230.

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003).  "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C. Cir. 1993). "Granting leave to amend . . . is not required if the plaintiff has already pleaded her "'best case.'" *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citing *Bazrowx*, 136 F.3d at 1054)). "A plaintiff has pleaded her best case after she is apprised of

the insufficiency of her complaint." *Wiggins*, 710 F. App'x at 627 (internal quotation and citation omitted). The Fifth Circuit further explained:

> **A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court.** *See Brewster*, 587 F.3d at 767–68**. Similarly, a district court need not grant a futile motion to amend.** *Legate*, 822 F.3d at 211 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000)). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*

*Wiggins*, 710 F. App'x at 627 (emphasis added in bold). The Fifth Circuit has affirmed denials of leave to amend where it determined that the proposed amendment would be futile after analyzing the claims. *See Edoinwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (where the proposed amended complaint failed to state a claim under 42 U.S.C. § 1983).

Here, Husak did not expressly request with particularity the opportunity to amend her complaint. *Willard*, 336 F.3d at 387. Both of Husak's requests for leave to further amend her complaint state:

> Should the Court determine that one or more of the challenged claims fail to state a claim or are otherwise barred, then Husak should be permitted to amend, since there is no undue delay, bad faith, dilatory motive, or undue prejudice.

(ECF No. 17 at 26; ECF No. 18 at 15). This statement "does not provide any indication of the grounds on which such an amendment should be permitted." *Willard*, 336 F.3d at 387. Northern District of Texas Local Civil Rule 15.1 requires a party seeking leave to file an amended pleading to "attach a copy of the proposed amended pleading as an exhibit to the motion[.]" N. D. Tex. Loc. Civ. R. 15.1(a). Husak attached no amended pleading to her request for leave. Furthermore, the Court determines Husak's amendment would be futile. Critically—as discussed above in the Rule 12(b)(6) analyses—Husak's First Amended Complaint is devoid of pled facts regarding (i) the

remediation sub-element of her sexual harassment hostile work environment claim and (ii) the adverse employment action element of her sex discrimination claim. (*See* ECF No. 6).

Thus, as already amended, Husak has failed to include material facts to support her only federal claims. The Court has otherwise declined to exercise supplemental jurisdiction over the remaining non-federal claims. For those reasons, the Court concludes permitting Husak "any [further] attempts at amendment would be futile." *See generally Wiggins*, 710 F. App'x at 627 (discussing the same). The Court DENIES Husak's Motions for Leave.

## IV.   CONCLUSION

For the reasons enumerated above, the Court (i) DENIES Husak's Motion to Seal; (ii) GRANTS Baylor's Motion to Dismiss; (iii) GRANTS DiMaio's Motion to Dismiss; and (iv) DENIES Husak's Motions for Leave. Husak's sexual harassment hostile work environment claim and sex discrimination claims are DISMISSED WITH PREJUDICE. No federal claims remain. The Court DECLINES to exercise supplemental jurisdiction over the remaining non-federal claims; thus, Husak's remaining claims are DISMISSED WITHOUT PREJUDICE. The Court shall enter a corresponding final judgment. *See* Fed. R. Civ. P. 54.

**SO ORDERED.**

28th day of September, 2023.

ADA BROWN
UNITED STATES DISTRICT JUDGE